UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>            Plaintiff,<br><br>     v.<br><br>EIKE BLOHM,<br>            Defendant. | Docket No. 2:20-mj-00064 |

DEFENDANT'S APPEAL OF DETENTION ORDER

Defendant Eike Blohm, by and through his attorneys, Langrock Sperry & Wool, LLP, hereby moves for revocation of the Order of Detention dated May 22, 2020 and requests release pursuant to 18 U.S.C. §3142, and *United States v. Salerno*, 481 U.S. 739 (1987).

I.     Procedural History of the Instant Matter

The government filed a Criminal Complaint in this matter on May 21, 2020, charging Dr. Blohm with production of sexually explicit materials involving a minor (18 U.S.C. §2251(a)) and possession of child pornography (18 U.S.C.§2252(a)(4)(B)). Dr. Blohm was arrested the same night, and appeared by telephone on May 22 for an initial appearance and detention hearing. Following arguments by counsel, the court found that the government had proved that Dr. Blohm posed a risk of flight such that no combination of conditions could reasonably assure his appearance. The court ordered him detained pending trial.

Defendant now asks the court to revoke the Order of Detention, pursuant to 18 U.S.C. §3145, as having been granted in violation of 18 U.S.C §3142. The government has not proved by a preponderance of evidence that Dr. Blohm poses a risk of flight that cannot be mitigated by conditions of release, or by clear and convincing evidence that Dr. Blohm is a

danger to the community, or that there is no combination of conditions that will protect the public pending his trial. Therefore he must be released pursuant to 18 U.S.C. §3142, and the 5th Amendment of the United States Constitution.

II.     Other Relevant Procedural History

On April 16, 2020, Burlington Police Department began an investigation into Dr. Blohm's activities at University of Vermont Medical Center. A search warrant was executed at his home on April 17th, and Dr. Blohm was cited to appear in Vermont state criminal court on multiple misdemeanor and felony voyeurism charges. Arraignment in that matter was scheduled for May 28, 2020. Dr. Blohm retained counsel, and his attorney was in touch repeatedly with the Chittenden County Deputy State's Attorney handling the matter, Dana DiSano. Dr. Blohm's counsel communicated with Attorney DiSano about conditions of release that might be required and acceptance of service of an amended citation. As late as May 20, 2020, the undersigned was in email contact with Attorney DiSano about the state criminal matter.

In the meantime, Dr. Blohm appeared in Family Court on a related matter. In connection with that matter, Det. Dalla Mura filed a Supplemental Affidavit ("Dalla Mura Affidavit"), dated on May 8, 2020 and describing in detail the exact same 21 videos detailed in Paragraph 19 of Special Agent Fiore's Affidavit in Support of Criminal Complaint in this matter. Dr. Blohm and counsel saw the Dalla Mura Affidavit on 11, 2020. The Dalla Mura Affidavit describes in significant detail the content of each of the 21 videos of alleged child pornography, as well as allegations regarding the creation of those videos by Dr. Blohm. Those allegations were further amplified in a Vermont Family Court hearing attended (telephonically) by Dr. Blohm and counsel on May 13, 2020.

At the detention hearing in this matter on May 22, the Magistrate Judge noted that while Dr. Blohm had been cited for state voyeurism charges, he did not know that he would be subject to a more serious federal charge with a mandatory minimum sentence. However, that is not an accurate statement of Dr. Blohm's knowledge over the last several weeks. Since May 11th, Dr. Blohm and his counsel have been in possession of the Dalla Mura Affidavit and have been fully aware of its implications. In particular, Dr. Blohm and counsel have been mindful that the facts recited in the Dalla Mura Affidavit could form the basis for a charge of production of child pornography, with its attendant mandatory minimum sentence. While such a charge was not actually filed until May 21st, Dr. Blohm was aware of the possibility, if not likelihood, well before that.

III.     Dr. Blohm's History and Characteristics

The history and characteristics of the defendant are primary factors in considering whether appropriate conditions of release can be devised. In this case, the Defendant's history and characteristics overwhelmingly support release. Dr. Blohm is thirty-eight years old, and has lived in the United States for his entire adult life. He moved here in 2003, and graduated from the prestigious Johns Hopkins medical school in 2012. He began employment with University of Vermont Medical Center as an attending physician in the Department of Surgery in June 2017, with a primary work location in the emergency department. He had a successful medical practice and was a valued colleague up until his termination last week on the basis of the instant charge. While his UVMMC employment has been terminated, he continues to have consulting work available to him, which he had been doing before his incarceration.

Dr. Blohm married Staci Tokarz last year, and has financial supported her and her daughter. He has a spotless prior record – no history of substance abuse, mental instability, criminal conduct, or failure to take responsibility in any fashion. He became a United States citizen in 2018, having undergone all the background checks and personal examination that citizenship entails.

Up until recently, Dr. Blohm lived with his family in South Burlington. His wife had made the decision to move to North Carolina, and both he and his wife were eager that she and their daughter leave Vermont to protect their daughter from the publicity surrounding this incident. However, Dr. Blohm was already subject to a citation on felony voyeurism charges in the State of Vermont, and as noted above, he had reason to expect additional charges based on the Dalla Mura Affidavit. Mindful that the criminal charges could take months or more to resolve, he therefore made arrangements to stay in Vermont after his family left.  In anticipation of a potential order by the Vermont Family Court requiring him to vacate the home so long as HT lived there, and under the extreme restrictions on mobility and lodging imposed by the State of Vermont Emergency Orders relating to the COVID-19 pandemic, Dr. Blohm purchased a camper (for $12,000) to live in on approximately May 12, 2020.  Now, however, the Defendant's wife intends for HT to spend time in Massachusetts with her grandmother pending the move to North Carolina; as a result, Dr. Blohm would be free to return to the South Burlington house and live there (or another approved residence) pending resolution of this case.

In the meantime, Dr. Blohm has taken substantial additional steps to prepare for this case. He has retained private counsel. He has begun engaging in counseling, and his attendance and participation has been confirmed by counsel. He has also begun the process of

a full evaluation. All his actions to date portray a person who has faced the reality of the charges facing him and made plans to address them head-on.

IV.     <u>Dr. Blohm Should Be Released With Conditions</u>

Under the specific facts and circumstances of this case, conditions of release can be imposed that would reasonably assure both Defendant's appearance in court and the safety of the community.

As the Supreme Court held in *United States v. Salerno*, 481 U.S. 739 (1987), "[i]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *Id.* at 755. This presumption of release is encapsulated in the Bail Reform Act, 18 U.S.C. § 3142. The statute states that the Court "shall order" pretrial release, § 3142(b), except in certain narrow circumstances. Even if the Court determines under § 3142(c) that an unsecured bond is not sufficient, the Court "shall order" release subject to "the least restrictive further conditions" that will "*reasonably assure*" the defendant's appearance in court and the safety of the community. § 3142(c)(1) (emphasis added). Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2dCir. 1987) (quoting S. Rep. No. 98-225, at 7 (1984), as reprinted in 1984 U.S.C.C.A.N. 3182, 3189); *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir.2007); *see also United States v. Byrd*, 969 F.2d 106, 110 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors nondetention.").

    A.     <u>Any Risk of Flight Can Be Addressed With Conditions of Release</u>

The Defendant does not concede in any way that he poses a risk of flight. As discussed above, Dr. Blohm has been aware of the likelihood of these charges, including the associated mandatory minimum sentence, for weeks, and has done nothing other than order his affairs so

5

that he would be able to meet the charges. Even if the government could prove by a preponderance of evidence that Dr. Blohm posed a risk of flight, however, it would be unable to prove that conditions release would fail to reasonably assure his appearance. Any risk of flight can be easily addressed with appropriate conditions of release. Dr. Blohm would be subject to electronic monitoring, which could include GPS monitoring and home detention conditions. Dr. Blohm could live in the South Burlington home, and be required to find other appropriate housing if he were to obtain an offer for purchase. While the government and Pretrial Services have pointed to Dr. Blohm's dual citizenship, any travel out of the country can be prevented simply by requiring him to turn over both his United States and German passports. Travel without such documents would be essentially impossible at any time; now, with extensive border closures due to COVID-19, it would unthinkable. GPS monitoring would assure that Dr. Blohm would be unable to flee – and certainly not out of the country – without immediate detection and intervention. An appearance bond could provide a further assurance against non-appearance.

      B.      <u>Any Danger to the Community Can be Reasonably Addressed with Conditions</u>

Implicit in the government's argument that the nature of the charge itself evidences a danger to the community is the unfounded suggestion that Dr. Blohm will be unable or unwilling to conform his conduct to the law while these charges are pending.

To be sure, some defendants pose a danger that they will commit new crimes if they are released. The Bail Reform Act reflects "the deep public concern ... about the growing problem of crimes committed by persons on release and the recognition that there is a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure

the safety of the community…. Congress has determined that *[w]hen there is a strong probability that a person will commit additional crimes if released*, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate." *United States v. Chimurenga*, 760 F.2d at 403 (emphasis added).

      Dr. Blohm, however, is clearly among the small class of persons contemplated by the Bail Reform Act. To the contrary, there is no reason to think that he will continue to commit crimes while on release. He has in fact taken significant steps to ensure his compliance with the orders of the Vermont Family Court. He has demonstrated thorough acceptance of the authority of the state courts, and there is every reason to believe he will similarly respect the authority of the federal court. Certainly the government has no basis for concluding that "there is a strong probability that [he] will commit additional crimes if released."

      The same conditions of release that will reasonably assure his appearance in court will similarly provide further assurance that Dr. Blohm will not commit additional crimes if he is released. Home detention and GPS monitoring would assure that he has no contact with minors. A condition requiring that he comply with Vermont Family Court orders will provide extra enforcement for orders that are specifically fashioned for the sole purpose of protecting the alleged victim in this matter.

      WHEREFORE it is respectfully requested that this honorable court revoke the Order of Detention and immediately release Dr. Blohm on appropriate conditions.

      DATED at Burlington, Vermont this 27th day of May, 2020.

LANGROCK SPERRY & WOOL, LLP



Lisa B. Shelkrot
PO Box 721, 210 College Street
Burlington, VT 05402
lshelkrot@langrock.com
Phone:  (802) 864-0217

Attorneys for Defendant Eike Blohm

1075240.1